# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TRAVIS DAY, | ) CIVIL ACTION |
| | ) |
| Plaintiff, | ) Case No.: 2:21-cv-01710 |
| | ) |
| v. | ) |
| | ) HONORABLE MARILYN J. HORAN |
| WESTMORELAND COUNTY, | ) |
| | ) |
| Defendant. | ) Electronically Filed. |

## THIRD AMENDED COMPLAINT IN A CIVIL ACTION

COMES NOW, the Plaintiff, TRAVIS DAY, by and through his attorneys, LAW OFFICES OF JOEL SANSONE, JOEL S. SANSONE, ESQUIRE, MASSIMO A. TERZIGNI, ESQUIRE, and ELIZABETH A. TUTTLE, ESQUIRE, and files this Third Amended Complaint in a Civil Action as follows:

## JURISDICTION AND VENUE

1. This is an action to redress the deprivation by the Defendant of the Plaintiff's civil rights, and in particular, the right to be free from illegal, invidious and damaging discrimination and harassment in his employment on account of his race, which right is guaranteed by the Constitution of the United States and the laws and statutes enacted pursuant thereto, and in particular, Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, et seq. (as amended) ("Title VII"), the Civil Rights Act of 1991 (as amended), as well as pendent state law claims. Declaratory relief is sought under, and by virtue of, Title 28 U.S.C. §§2201 and 2202.

2. Plaintiff has satisfied all procedural and administrative requirements set forth in Section 706 of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. Section 2000e-5.

3. This action is also brought under the Fourteenth Amendment to the United States

Constitution and 42 U.S.C. § 1983.

4. Jurisdiction of this Honorable Court is founded upon Title 28 U.S.C. §§ 1331 and 1343(3).

5. Venue is proper under 28 U.S.C.A. § 1391(b). All claims set forth herein arose in the Western District of Pennsylvania and the Plaintiff resides in the Western District of Pennsylvania.

## PARTIES

5. Plaintiff, Travis Day, is an adult, African American male residing in Westmoreland County, Pennsylvania.

6. Defendant, Westmoreland County ("County"), is a Pennsylvania municipal corporation with administrative offices located at 2 North Main Street, Suite 101, Greensburg, Pennsylvania 15601.

7. Westmoreland County Sheriff's Office is a political subdivision of Defendant County that maintains and operates a Sheriff's Office at 2 N Main Street, Greensburg, Pennsylvania 15601.

8. At all times relevant hereto, Defendant County was acting through its partners, directors, agents, subsidiaries, officers, employees and assigns within the full scope of their respective agency, office, employment or assignment.

## FACTUAL ALLEGATIONS

9. In February of 2018, Jonathan Held ("Held"), the former Sheriff of Westmoreland County, became a defendant in numerous race discrimination complaints alleging that he failed to hire African Americans at the Westmoreland County Sheriff's Office and that he

discriminated against the only African American employee that was employed by the Westmoreland County Sheriff's Office.

10. At all times relevant to this complaint, Held was the duly elected Sheriff of Westmoreland County. He was the chief policymaker in the Westmoreland County Sheriff's Office. He was responsible for the work performed, and had control over employment opportunities for all prospective and current employees of the Westmoreland County Sheriff's Office.

11. Held was subsequently placed on notice of Westmoreland County's non-discrimination policy by the Commissioners for Westmoreland County.

12. Entirely in response to these allegations of race discrimination, Mr. Day, an African American, was hired by the Westmoreland County Sheriff's Office on February 26, 2018.

13. At all times relevant to this complaint, Mr. Day held the rank of Captain.

14. The position of Captain is a supervisory position.

15. At the time he was hired, Mr. Day held bachelor's degrees in criminal justice and criminal science, as well as a master's degree in criminal investigations.

16. Also, at the time he was hired, Held publicly represented that Mr. Day's credentials far exceeded those of the other eight or so applicants.

17. Despite the foregoing, and at all relevant times, Mr. Day was subjected to at least the following discriminatory treatment at the Westmoreland County Sheriff's Office in the terms and conditions of his employment:

    a. Held never called him by his ranking title, nor did her require any other deputy to call him by his ranking title;

    b. He was not provided necessary law enforcement equipment (including his shirt, badge, baton, and taser) and, when he was provided with his uniform, it was the wrong size and he was only permitted to order the same amount as lower-ranking

        Caucasian deputies even though his rank gave him a greater allotment;

    c.    He was never provided a job description, nor were deputies in the Westmoreland County Sheriff Office notified of his supervisory authority;

    d.    His parking space was given to lower-ranking Caucasian deputies;

    e.    His work schedule was consistently changed to his detriment to accommodate scheduling requests of lower-raking Caucasian deputies;

    f.    He was not permitted to issue reprimands and/or discipline to his subordinates, which effectively served to undermine any supervisory authority that he had in the Westmoreland County Sheriff's Office and that were necessary to carry out the functions of his position;

    g.    He was not permitted to use the firing range that Caucasian deputies were permitted to use for firearms qualifications, thus effectively segregating him from the rest of the Westmoreland County Sheriff's Office;

    h.    He was not timely provided the handgun qualifications course practice module written materials even though Caucasian deputies were promptly provided the same and therefore placed in better positions to succeed; and

    i.    He was denied his rightful position on Westmoreland County's Prison Board and thus not permitted to attend meetings even though lower-ranking Caucasian deputies were permitted to fill those positions and attend meetings.

18.    Defendant County, through its agents and/or employees, invalidated Mr. Day's position so that he was unable to carry out his job duties and/or responsibilities and was humiliated and demeaned in his employment, as described hereinbefore above.

19.    Mr. Day believes, and therefore avers, that he was treated less favorably than Caucasian employees of Westmoreland County based on his race, African American.

20.    Mr. Day complained to Held that he believed he was being treated less favorably in the terms and condition of his employment at the Westmoreland County Sheriff's Office because of his race, African American.

21. On multiple occasions following his complaint, Held intentionally altered Mr. Day's timecard to make it look as though he worked less hours than his lower-ranking Caucasian deputies even though that was false.

22. Mr. Day believes, and therefore avers, that Held took these actions, as described hereinbefore before above, in retaliation for Mr. Day's complaint of race discrimination.

23. Held also ordered a Lieutenant from the Westmoreland County Sheriff's Office, Denise Appleby ("Appleby"), without justification and on numerous occasions, to surveil Mr. Day at his residence when he was off duty.

24. When confronted about this surveillance, Appleby told Mr. Day that she was ordered to "watch" him by Held, who wanted to his day-to-day activities.

25. Appleby also informed Mr. Day that she was ordered to surveil him even on her days off from the Westmoreland County Sheriff's Office.

26. Mr. Day believes, and therefore avers, that Held took these actions, as described hereinbefore before above, in retaliation for Mr. Day's complaint of race discrimination.

27. In or about July 2018, Mr. Day began his training at the Pennsylvania Commission on Crime and Delinquency ("PCCD") in his capacity as an employee of Defendant County. PCCD was to provide Mr. Day with the education and training necessary to maintain the position of sheriff deputy.

28. PCCD is a statutorily created Commission that, among other things, focuses on justice-related programs in the Commonwealth and is responsible for carrying out the Deputy Sheriffs' Education and Training Act, 71 P.S. § 2101, *et seq.*

29. During his training, Mr. Day witnessed and was subjected to racially discriminatory conduct when PCCD's instructors (including supervisory instructors) referred to African

Americans as "Buckwheat," "boy," "cotton pickers," "Coons," "jungle boys," and "tar babies," and used terms such as "slave boy" and "slave driver" to identify their subordinates and superiors.

30. Mr. Day reported the foregoing to the appropriate personnel at PCCD and to Held.

31. Soon after reporting this racial misconduct, Mr. Day became the target of a campaign of retaliation that included, among other things, the supervisors/instructors about whom he complained encouraging his peers to provide false statements against him to use as a vehicle to impose unjustified and unwarranted discipline.

32. Thereafter, Mr. Day again complained to Held about race discrimination, as described hereinbefore above.

33. Mr. Day then had a meeting with Defendant County's Director of Human Resources, Defendant County's Solicitor and Held to discuss and address racial discrimination within Defendant County's Sheriff Department and PCCD.

34. Notwithstanding Mr. Day's multiple complaints of racial discrimination, he was dismissed from PCCD on August 21, 2018.

35. Mr. Day was dismissed from PCCD prior to the completion of his training.

36. PCCD's stated reason(s) stated for Mr. Day's dismissal were, and are, pretextual and unworthy of belief.

37. Mr. Day believes, and therefore avers, that he was dismissed from PCCD because of his race, African American, and/or in retaliation for his complaints of race-based discrimination, as described hereinbefore above.

38. As a result of his unjustified dismissal, Mr. Day was prevented from completing his training.

39. Shortly after his unjustified dismissal from PCCD, Mr. Day was suspended without pay from his employment with Defendant County.

40. Defendant County's stated reason for Mr. Day's suspension was his alleged failure to complete his required training through PCCD.

41. Defendant County's stated reason(s) stated for Mr. Day's suspension were, and are, pretextual and unworthy of belief.

42. At the time of his unjustified suspension, Mr. Day was entitled to at least another six months to complete his training.

43. Mr. Day believes, and therefore avers, that he was suspended from his employment with Defendant County in retaliation for his complaints of race-based discrimination, as described hereinbefore above.

44. Mr. Day appealed his dismissal from PCCD on the basis that it was unjustified and motivated by retaliatory animus.

45. Mr. Day was ultimately terminated from his employment with Defendant County on March 15, 2019, while his appeal against PCCD was pending, while he was still serving an unpaid and unjustified suspension and while he had not yet been employed by Defendant County for a year.

46. Furthermore, several Caucasian deputies received additional time from Defendant County to complete their trainings through PCCD. These deputies include, but are not limited to, Appleby; Amanda Barbish; and Zachary Vernail.

47. In contrast, Defendant County did not provide Mr. Day with additional time to complete his training.

48. At the time Mr. Day was terminated from Defendant County, he was aware of numerous instances in which Caucasian deputies should have received some form of discipline and/or reprimand for misconduct or policy violations but did not:

    a. Deputy Sergeant Scott Pfeifer confessed to Held that he was found speeding in his department-issued vehicle, but received no discipline and/or reprimand;

    b. Deputy Corporal Steve Felder used his cell phone on multiple occasions while on duty in domestic relations, telling Mr. Day, "it's all good in the hood, Cap," but received no discipline and/or reprimand;

    c. Deputy Corporal Brandon Stephenson verbally and violently assaulted another deputy without justification, but received no discipline and/or reprimand;

    d. Deputy Poerio disobeyed orders concerning his assigned schedules, telling Mr. Day to "shut the fuck up" in front of others, but received no discipline and/or reprimand;

    e. Deputy Corporal Caitlyn Kralovic was charged with driving under the influence, but received no discipline and/or reprimand;

    f. Deputies Nicholas Frohnofer and John Dixon failed to search an arrestee prior to turning her over to prison authorities, resulting in her entering the prison with a knife and BB gun, but received only a one-day paid suspension;

    g. Deputy Edward Fink was found to have sexually harassed another employee but received only a two-day paid suspension;

    h. Warrant Deputy Alex Harshell tested positive for cocaine, but received a paid suspension;

    i. Deputy Rob Orbin was arrested for fighting at a public concert, but received no discipline and/or reprimand;

    j. Deputy Kaysi Kerlin engaged in the verbal assault of another employee while carrying a firearm (her third misconduct of this type), but received no discipline and/or reprimand; and

    k. Deputy John Zanirini was reported as having openly called two Hispanic adolescents "spick," but received no discipline and/or reprimand.

49. Mr. Day believes, and therefore avers, that he was treated less favorably than Caucasian employees of Westmoreland County based on his race, African American.

50. Moreover, multiple deputies employed by Defendant County stated, "that black mother fucker doesn't deserve to be Captain." These deputies received no discipline and/or reprimand.

51. On several other occasions, lower-ranking Caucasian deputies openly used profanity toward Mr. Day, pointed their fingers in his face, made threatening gestures toward him in connection with their service weapons, and threw his paperwork on the ground all without discipline and/or reprimand.

52. Mr. Day consistently complained to Held about this misconduct, as described hereinbefore above.

53. Mr. Day believes, and therefore avers, that he was suspended, and eventually terminated, from his employment with Defendant County because of his race, African American, and/or in retaliation for his complaints of race-based discrimination, as described hereinbefore above.

COUNT I:

PLAINTIFF v. DEFENDANT COUNTY

RACE DISCRIMINATION

54. Plaintiff incorporates by reference Paragraphs 1 through 53 as though fully set forth at length herein.

55. As described hereinbefore above, Plaintiff was subjected to discrimination based on his race in that he was treated less favorably than Caucasian employees.

56. Although Plaintiff made multiple formal complaints to agents and/or employees of Defendant County regarding the discriminatory actions, Defendant County did nothing to prevent further discriminatory conduct or discipline the employees involved.

57. Furthermore, Plaintiff was suspended, and eventually terminated, from his employment with Defendant County when similarly situated Caucasian employees were not.

58. As a direct result of the Defendant County's discriminatory actions in violation of Title VII of the Civil Rights Act of 1964, and the Civil Rights Act of 1991, Plaintiff has incurred counsel fees and other costs in pursing his legal rights.

59. Additionally, the Plaintiff has suffered emotional, psychological and physical distress, inconvenience, loss of reputation, humiliation and embarrassment as a direct result of the Defendant County's discriminatory conduct, as described above.

60. The actions of Defendant County, through its agents and/or employees, were intentional, willful and deliberate and/or done with reckless disregard for the rights of the Plaintiff.

61. The actions on part of Defendant County are part of a plan, practice or pattern of discrimination which may affect others who are similarly situated to the Plaintiff.

WHEREFORE, Plaintiff requests the following:

a. that the Court enter a judgment declaring the actions of Defendant County to be unlawful and violative of Title VII of the Civil Rights Acts of 1964 and 1991;

b. that, in addition to the damages described hereinbefore above, the Court award the Plaintiff compensatory and punitive damages as a result of the Defendant County's violation of the Civil Rights Act of 1991;

c. that the Court order Defendant County to reinstate the Plaintiff to the position that he held prior to his termination and increase the Plaintiff's salary to the level to which he would be entitled but for the discrimination described above, together with the accumulated seniority, fringe benefits, position and all other rights associated with that position; or, in the alternative, that the Court order Defendant County to pay the Plaintiff front pay equivalent to his lost salary, salary raises, fringe benefits and all other rights to which he would have been entitled but for Defendant County's discriminatory conduct;

d. that the Court award the Plaintiff compensation for any and all lost salary, wages and benefits;

e. that the Court order Defendant County to pay pre and post-judgment interest on any award given to the Plaintiff;

f. that the Court award the Plaintiff reasonable attorneys' fees and costs of this action; and

g. that the Court grant the Plaintiff such additional relief as may be just and proper.

JURY TRIAL DEMANDED

COUNT II:

PLAINTIFF v. DEFENDANT COUNTY

<u>RETALIATION</u>

62. Plaintiff incorporates by reference Paragraphs 1 through 61 as though fully set forth at length herein.

63. As described hereinbefore above, Plaintiff was retaliated against for engaging in a protected activity. The retaliatory conduct included, but was not limited to, subjecting the Plaintiff to an unjustified suspension without pay and also terminating the Plaintiff's employment.

64. As a direct result of Defendant County's discriminatory actions, and in violation of Title VII, Plaintiff has and/or will incur counsel fees and other costs in pursuing his legal rights. Plaintiff has also suffered from emotional distress, inconvenience, humiliation, defamation of character and stress.

65. The actions on the part of Defendant County, through its employees, were intentional and willful and/or done with a reckless disregard of the Plaintiff.

WHEREFORE, Plaintiff requests the following:

a. that the Court enter a judgment declaring the actions of Defendant County to be unlawful and violative of Title VII of the Civil Rights Acts of 1964 and 1991;

b. that, in addition to the damages described hereinbefore above, the Court award the Plaintiff compensatory and punitive damages as a result of the

Defendant County's violation of the Civil Rights Act of 1991;

c. that the Court order Defendant County to reinstate the Plaintiff to the position that he held prior to his termination and increase the Plaintiff's salary to the level to which he would be entitled but for the discrimination described above, together with the accumulated seniority, fringe benefits, position and all other rights associated with that position; or, in the alternative, that the Court order Defendant County to pay the Plaintiff front pay equivalent to his lost salary, salary raises, fringe benefits and all other rights to which he would have been entitled but for Defendant County's discriminatory conduct;

d. that the Court award the Plaintiff compensation for any and all lost salary, wages and benefits;

e. that the Court order Defendant County to pay pre and post-judgment interest on any award given to the Plaintiff;

f. that the Court award the Plaintiff reasonable attorneys' fees and costs of this action; and

g. that the Court grant the Plaintiff such additional relief as may be just and proper.

## COUNT III:

## PLAINTIFF v. DEFENDANT COUNTY

## PENNSYLVANIA HUMAN RELATIONS ACT

66. Plaintiff incorporates Paragraphs 1 through 65 as though fully set forth at length herein.

67. As set forth above, Defendant County both discriminated and retaliated against the Plaintiff because of his race in violation of the Pennsylvania Human Relations Act, 43 Pa C.S.A Section 955(a).

68. As a direct result of the Defendant County's discriminatory and retaliatory actions and violations of the PHRA, the Plaintiff has, and/or will, incur counsel fees and other costs in pursing his legal rights. The Plaintiff has also suffered from physical and emotional distress, inconvenience, humiliation, apprehension and stress.

69. The actions on the part of Defendant County, through its agents and/or employees, were intentional and willful and/or done with a reckless disregard of the Plaintiff.

WHEREFORE, Plaintiff requests the following:

a. that the Court enter a judgment declaring the actions of Defendant County to be unlawful and violative of the Pennsylvania Human Relations Act;

b. that, in addition to the damages described hereinbefore above, the Court award the Plaintiff compensatory damages as a result of Defendant County's violations of the Pennsylvania Human Relations Act;

c. that the Court order Defendant County to reinstate the Plaintiff to the position that he held prior to her constructive discharge and increase the Plaintiff's salary to the level to which he would be entitled but for the discrimination described above, together with the accumulated seniority, fringe benefits, position and all other rights associated with that position; or, in the alternative, that the Court order the Defendants to pay the Plaintiff front pay equivalent to his lost salary, salary raises, fringe benefits and all other rights to which he would have been entitled but for Defendant County's discriminatory conduct;

d. that the Court award the Plaintiff compensation for any and all lost salary, wages and benefits;

e. that the Court order Defendant County to pay pre and post-judgment interest on any award given to the Plaintiff;

f. that the Court award the Plaintiff reasonable attorneys' fees and costs of this action; and

g. that the Court grant the Plaintiff such additional relief as may be just and proper.

JURY TRIAL DEMANDED

## COUNT IV:

## PLAINTIFF v. DEFENDANT COUNTY

## VIOLATION OF PLAINTIFF'S CONSTITUTIONAL RIGHTS, SPECIFICALLY, 42 U.S.C. §1983 AND THE FOURTEENTH AMENDMENT OF THE UNITED STATES CONSTITUTION

## EQUAL PROTECTION – RACE DISCRIMINATION

70. Plaintiff incorporates by reference Paragraphs 1 through 69 as though fully set forth at length herein.

71. As described more fully hereinbefore above, Defendant County subjected the Plaintiff to an unjustified suspension and eventual termination of his employment.

72. Plaintiff believes, and therefore avers, that he was terminated on the basis on his race, African American.

73. Furthermore, Plaintiff was not afforded the same opportunities as similarly situated Caucasian employees.

74. As a direct and proximate result of the acts mentioned hereinbefore above perpetrated by Defendant County, Plaintiff suffered the following injuries and damages:

    a. Plaintiff's rights under the Fourteenth Amendment to the United States Constitution were violated;

    b. damage to his reputation;

    c. loss of employment and the benefits thereto;

    d. emotional trauma and suffering; and

    e. economic damages related to any and all consequential costs.

WHEREFORE, the Plaintiff demands compensatory general damages against Defendant County in the amount proven at trial; compensatory special damages including, but not limited to costs of suit, reasonable attorney's fees as permitted by law, pre- and post-judgment interest as

permitted by law, and such other relief, including injunctive and/or declaratory relief, as this Court may deem proper.

        JURY TRIAL DEMANDED

        Respectfully submitted,

        LAW OFFICES OF JOEL SANSONE

        <u>s/ Joel S. Sansone</u>
        Joel S. Sansone, Esquire
        PA ID No. 41008
        Massimo A. Terzigni, Esquire
        PA ID No. 317165
        Elizabeth A. Tuttle, Esquire
        PA ID No. 322888
        *Counsel for Plaintiff*

        Law Offices of Joel Sansone
        Two Gateway Center, Suite 1290
        603 Stanwix Street
        Pittsburgh, Pennsylvania 15222
        412.281.9194

Dated: September 3, 2021