IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
PITTSBURGH

| | |
|---|---|
| TRAVIS DAY, | ) |
| | ) |
| | ) 2:20-CV-01710-MJH |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| WESTMORELAND COUNTY, | ) |
| | ) |
| Defendants | |

OPINION

Plaintiff, Travis Day, brings claims for race discrimination and retaliation under Title VII of the Civil Rights Act and the Pennsylvania Human Relations Act (PHRA) (Counts I, II, and III) and pursuant to 42 U.S.C. § 1983 for violations of his constitutional rights under the Fourteenth Amendment (Count IV) against Defendant, Westmoreland County. The County has filed a Motion to Dismiss pursuant to Fed. R. Civ. 12(b)(6). (ECF No. 59). The matter is now ripe for consideration.

Upon review of Mr. Day's Third Amended Complaint (ECF No. 57), the County's Motion to Dismiss (ECF No. 59), the respective briefs (ECF Nos. 60 and 61), and for the following reasons, Defendant's Motion to Dismiss will be granted.

I.  Background

On February 26, 2018, Mr. Day, an African American, was hired as a deputy by the Westmoreland County Sheriff's Office. (ECF No. 57 at ¶ 11). After he was hired, Mr. Day alleges that he experienced various forms of discriminatory treatment at the Sheriff's Office, where, among other things, lower ranking Caucasian deputies were given responsibilities and perks that were denied to him; he was not given proper uniforms and equipment; his supervisory

authority was diminished; and he was not timely provided with the handgun qualifying course and denied the use of the firing range. *Id*. at ¶ 17. Mr. Day further alleges that he complained to Sheriff Jonathan Held that he was being treated less favorably because of his race. *Id*. at ¶ 20. In response, Sheriff Held allegedly placed Mr. Day under surveillance and altered his timecard. *Id*. at ¶¶ 20-26.

On or about July 2018, Mr. Day commenced mandatory basic training for deputy sheriffs at the Sheriff Training Academy (Academy) through the Pennsylvania Commission on Crime and Delinquency (PCCD or Commission), which is statutorily created agency. *Id*. at ¶¶ 27-28. Mr. Day alleges that he witnessed and experienced racial discrimination at the Academy, and that he heard racial slurs during training. *Id*. at ¶ 29. Mr. Day avers that, after he reported the racial discrimination to the Academy and Sheriff Held, the Academy encouraged peers to provide false information to use against him. *Id*. at ¶¶ 27-28. After meeting with the County and Sheriff Held to discuss discrimination at the Sheriff's Office and at the Academy, Mr. Day alleges that he was expelled from the Academy. *Id*. at ¶¶ 32-34. Mr. Day alleges that his dismissal was based on racial discrimination and that this prevented him from completing his training. *Id*. at ¶¶ 37-38. Because he was dismissed from the Academy and failed to complete training, Mr. Day alleges that the County suspended his employment without pay. *Id*. at ¶ 39. However, Mr. Day avers that he was entitled to another six months to complete training at the Academy. *Id*. at ¶42. Mr. Day's employment was terminated on March 15, 2019. *Id*. at ¶ 47. At the time of his termination, Mr. Day alleges that he was aware that several Caucasian deputies committed a variety of infractions unrelated to racial discrimination against him and were not disciplined for their misconduct. *Id*. at ¶ 48. Mr. Day alleges that his employment was terminated

because of his race and/or in retaliation for complaining about race discrimination at the Sheriff's Office and at the Academy. *Id*. at ¶ 53.

In its Motion to Dismiss, the County argues that Mr. Day's Title VII and PHRA claims (Counts I, II, and III) fail as a matter of law because 1) Mr. Day's expulsion from sheriff's training rendered him unqualified to work as a deputy sheriff; 2) the Sheriff, not the County, was Mr. Day's employer; 3) Mr. Day's allegations of racial discrimination against the County are insufficient to state a claim; 4) the County is not responsible for discriminatory acts that occurred during deputy sheriff training provided by the PCCD; and 5) Mr. Day fails to state a cause of action of retaliation. The County also contends that Mr. Day has not stated a plausible Section 1983 equal protection claim under the Fourteenth Amendment against the County (Count IV).

II.   Standard of Review

When reviewing a motion to dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Eid v. Thompson*, 740 F.3d 118, 122 (3d Cir. 2014) (quoting *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir.2008)). "To survive a motion to dismiss a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556); *see also Thompson v. Real Estate Mortg. Network*, 748 F.3d 142, 147 (3d Cir. 2014). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory

statements, do not suffice." *Iqbal*, 556 U.S. at 678. "Factual allegations of a complaint must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. A pleading party need not establish the elements of a *prima facie* case at this stage; the party must only "put forth allegations that 'raise a reasonable expectation that discovery will reveal evidence of the necessary element[s].'" *Fowler v. UPMC Shadyside*, 578 F.3d 203, 213 (3d Cir.2009) (quoting *Graff v. Subbiah Cardiology Associates, Ltd.*, 2008 WL 2312671 (W.D. Pa. June 4, 2008)); *see also Connelly v. Lane Const. Corp.*, 809 F.3d 780, 790 (3d Cir.2016) ("Although a reviewing court now affirmatively disregards a pleading's legal conclusions, it must still . . . assume all remaining factual allegations to be true, construe those truths in the light most favorable to the plaintiff, and then draw all reasonable inferences from them.") (citing *Foglia v. Renal Ventures Mgmt., LLC*, 754 F.3d 153, 154 n. 1 (3d Cir.2014)).

Nonetheless, a court need not credit bald assertions, unwarranted inferences, or legal conclusions cast in the form of factual averments. *Morse v. Lower Merion School District*, 132 F.3d 902, 906, n. 8 (3d Cir.1997). The primary question in deciding a motion to dismiss is not whether the Plaintiff will ultimately prevail, but rather whether he or she is entitled to offer evidence to establish the facts alleged in the complaint. *Maio v. Aetna*, 221 F.3d 472, 482 (3d Cir.2000). The purpose of a motion to dismiss is to "streamline [ ] litigation by dispensing with needless discovery and factfinding." *Neitzke v. Williams*, 490 U.S. 319, 326–327, (1989).

When a court grants a motion to dismiss, the court "must permit a curative amendment unless such an amendment would be inequitable or futile." *Great Western Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 174 (3d Cir. 2010) (internal quotations omitted). Further, amendment is inequitable where there is "undue delay, bad faith, dilatory motive, [or] unfair prejudice." *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002). Amendment is

futile "where an amended complaint 'would fail to state a claim upon which relief could be granted.' " *M.U. v. Downingtown High Sch. E.*, 103 F. Supp. 3d 612, 631 (E.D. Pa. 2015) (quoting *Great Western Mining & Mineral Co.*, 615 F.3d at 175).

    III.    Discussion

        A.  Title VII and PHRA Claims (Counts I, II, and III)

Mr. Day's Third Amended Complaint offers a plethora of facts regarding conduct by both the Westmoreland County Sheriff's Office and the Pennsylvania Commission on Crime and Delinquency.[1] However, those factual allegations aside, Mr. Day's employment discrimination and retaliation claims against the County pursuant to Title VII and PHRA must meet certain threshold criteria before the Court can reach the merits of said allegations. As explained below, Mr. Day cannot meet these thresholds in his pursuit of employment discrimination and retaliation claims (Counts I, II, and III).

        1.  Qualification

First, the County contends that Mr. Day cannot maintain his Title VII and PHRA claims[2] for discrimination and retaliation because his expulsion from basic sheriff training rendered him unqualified to work as a deputy sheriff in Pennsylvania. Specifically, it argues that Mr. Day failed to satisfy objective, externally-imposed standards necessary for employment. Mr. Day

---

[1] Mr. Day's original complaint alleged claims against, Westmoreland County, the Westmoreland County Sheriff's Office, Jonathan Held (the former Sheriff), the Pennsylvania Commission on Crime and Delinquency, and Pennsylvania State University. After a series of Motions to Dismiss (ECF Nos. 15, 23, 45, and 47) and Amended Complaints (ECF Nos. 6 and 43), only Westmoreland County remains.

[2] Claims brought under the PHRA are generally " 'interpreted coextensively with Title VII claims.' " *Brown v. J. Kaz, Inc.*, 581 F.3d 175, 179 n. 1 (3d Cir. 2009) (quoting *Atkinson v. LaFayette Coll.*, 460 F.3d 447, 454 n. 6 (3d Cir. 2006)). Therefore, the Court applies the same analysis to Mr. Day's claims under both Title VII and the PHRA.

maintains that he did in fact possess the minimum qualifications to maintain the position of deputy sheriff. Further, Mr. Day contends that at the time of his suspension and dismissal, he was entitled, by law, to another six months to complete his training. On this second point, the County argues that, as a matter of law, it did not have authority to grant Mr. Day additional time to complete basic sheriff training.

In *Makky v. Chertoff*, 541 F.3d 205 (3d Cir. 2008), the Third Circuit held that, in an employment discrimination case, "a plaintiff who does not possess the objective baseline qualifications to do his/her job will not be entitled to avoid dismissal" *Id*. at 215. The *Makky* Court continued,

> [t]his involves inquiry only into the bare minimum requirement necessary to perform the job at issue. Typically, this minimum requirement will take the form of some type of licensing requirement, such as a medical, law, or pilot's license, or an analogous requirement measured by an external or independent body rather than the court or the jury.

*Id*. *See also Iver v. Everson*, F.Supp.2d 748 (E.D. Pa. 2005) (employee failed to show he was qualified for an attorney position with the IRS that required an LLM in taxation, where he had neither completed nor was enrolled in an LLM program in taxation) and *Fiorentini v. William Penn Sch. Dist.*, 150 F.Supp.3d 559 (E.D. Pa. 2016) (furloughed plaintiff failed to make out prima facie case of age discrimination, where the persons hired back by the school district had required elementary teaching certifications, but plaintiff did not).

The minimum qualifications for deputy sheriff are governed by statute and regulations. The Sheriff and Deputy Sheriff Education and Training Act provides as follows.

> (a) Application of act.--Every sheriff of this Commonwealth shall assure that each full-time or part-time deputy employed by the sheriff who has less than five years of experience on the effective date of this act receives the training provided for in sections 5 and 6.

    (b) Prior education, training or experience.--The board, with the review and approval of the commission, shall have the authority and the discretion to reduce the hours of education and training required in section 5 for those deputy sheriffs required to receive education and training who, because of prior education, training or experience, have acquired knowledge or skill equivalent to that provided by the program.

    (c) Certification requirement for continued compensation.--Any person hired as a full-time or part-time deputy sheriff who has less than five years of experience on the effective date of this act shall, at the end of two years from the effective date of this act, be ineligible to receive any salary, compensation or other consideration or thing of value for the performance of duties as a deputy sheriff unless the deputy sheriff has met all of the requirements established pursuant to this act and has been duly certified as having met those requirements by the board, with the review and approval of the commission, unless the deputy sheriff is granted additional time to complete training by the board, with the review and approval of the commission. Any new deputy hired by the sheriff after July 1, 1985 shall have one year in which to complete training.

    \*\*\*

    (e) Penalty.--Any official of any county who orders, authorizes or pays a salary or compensation or other consideration or thing of value to any person in violation of this section commits a summary offense and shall, upon conviction, be sentenced to pay a maximum fine of $500 or to imprisonment for a term not to exceed 30 days.

71 P.S. § 2107.   Corresponding regulations of the Deputy Sheriffs' Education and Training Board (Board) provide:

    (a) A newly-hired deputy sheriff is required to undergo basic training of not more than 760 hours.

    (b) A deputy sheriff holding Board certification is required to undergo continuing education of at least 20 hours every 2 years.

    (c) To successfully complete basic training or continuing education, a deputy sheriff shall attain at least a minimum score established by the Board on each written test and shall demonstrate proficiency in all practical skills. Prior to the commencement of instruction for which a test will be administered, the Board will notify the deputy sheriff of the minimum score required.

37 Pa.Code § 421.3.   With regard to the authority of the Board to extend time for newly hired deputies, the regulations provide:

    (a) The Board upon request and for cause shown may extend the time up to 1 year for a newly-hired deputy sheriff to fulfill the basic training requirements of the act. Examples of good cause are:

        (1) A medical problem.
        (2) A family crisis or obligation.
        (3) A conflict with other employment.

    (b) The Board upon request may grant a deputy sheriff a reduction in the hours of basic training generally required. The determination will be based upon the Board's evaluation of the prior education, training or experience of the deputy sheriff under the following criteria:

        (1) The Board will grant a full waiver of basic training upon application by a deputy sheriff who has served a full, 4-year term as sheriff within this Commonwealth.

        (2) A deputy sheriff in one or more of the following categories may apply for a partial waiver of basic training:

            (i) Trained by the State Police and previously employed as a member of the State Police.
            (ii) Certified as a municipal police officer in this Commonwealth.
            (iii) Graduated from a course of basic training approved by the Municipal Police Officers' Education and Training Commission.

        (3) The Board will grant a partial waiver of basic training to a deputy sheriff in one or more of the categories in paragraph (2) who holds current certifications in basic first aid or its equivalent, adult/child/infant cardio-pulmonary resuscitation (CPR) and police firearms range qualification.

        (4) A deputy sheriff who has been granted a partial waiver of basic training shall be required to attend a waiver course of not more than 100 hours administered by the Board, attain at least a minimum score established by the Board on each written test and demonstrate proficiency in all practical skills. Prior to the commencement of instruction for which a test will be administered, the Board will notify the deputy sheriff of the minimum score required.

37 Pa.Code § 421.4.

    Here, Mr. Day has averred that he was expelled from the Academy and did not complete basic training. (ECF No. 57 at ¶¶ 34-35). Notably, this was not a decision of either the County

or the Sheriff's Office. Because he did not complete deputy sheriff training, Mr. Day was not eligible, by statute and regulations, to serve as a deputy sheriff with the Westmoreland County's Sheriff Office. Had Sheriff Held continued to employ Mr. Day as a deputy sheriff without completion of the training, he could have faced criminal liability. Furthermore, the authority to permit Mr. Day any opportunity to re-enter the Academy and be granted additional time for training rested solely with the Board, an entity independent of either the County or Westmoreland County Sheriff's Office. Thus, Mr. Day's arguments, that the County should have extended the opportunity to complete the deputy training, are unavailing. Therefore, without the minimum qualifications necessary to maintain his position as a deputy sheriff, Mr. Day cannot pursue any of his Title VII or PHRA claims.

### 2. Employer

The County next argues that the Westmoreland County Sheriff, and not the County, was Mr. Day's employer. Specifically, the County contends that Mr. Day's Third Amended Complaint attempts to distort the domains of the County and the Sheriff's Office. Mr. Day contends that he has set forth sufficient allegations to raise the reasonable expectation that discovery will reveal facts supporting his claim that the County, and not Sheriff Held, was his employer.

In order to state a Title VII claim, a plaintiff must allege an employment relationship with the defendant. *Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 119 (3d Cir. 2013). The burden of establishing an employment relationship for the purposes of Title VII claims falls upon the plaintiff. *E.E.O.C. v. Zippo Mfg. Co.*, 713 F.2d 32, 35 (3d Cir. 1983)

In *Covington*, the Third Circuit looked to the factors set forth in *Nationwide Mutual Insurance Co. v. Darden*, 503 U.S. 318, 112 S.Ct. 1344, 117 L.Ed.2d 581 (1992) to determine

whether an employment relationship exists.  The *Darden* factors "focus the employment relationship analysis on 'the level of control the defendant[s] ... exerted over the plaintiff" by asking whether the defendant: (1) paid the plaintiff; (2) hired or fired the plaintiff; and (3) maintained control over the plaintiff's daily activities. *Covington*, 710 F.3d at 119.

With regard to the first *Darden* factor, Mr. Day has not alleged whether he was paid by the County.  Even if Mr. Day had pleaded that he been paid by the County, at least one district court has held that funding salaries, providing human resources support, and handling benefits is insufficient to establish a county as an employer.  *Braden v. County of Washington*, 2010 WL 1664895 (W.D. Pa., No. 08-574, filed April 23, 2010).  The Pennsylvania Commonwealth Court has likewise held "the County's duty and role with respect to issues such as funding, salary, benefits, and collective bargaining are simply not enough to establish a joint employer relationship."  *Bowser v. Clarion Cty.*, 206 A.3d 68, 78 (Pa.Cmwlth. 2019).   As for factors 2 and 3, the Court looks to statutory authority of the Westmoreland County Sheriff.  The Pennsylvania County Code provides:

> The sheriff of each county may appoint such deputies and clerks as may be necessary to properly transact the business of his office. He may revoke the appointment of deputies in the same manner as his chief deputy. The sheriff may also appoint necessary special deputies, when any emergency arises, to assist him in executing any civil or criminal process or court order or in preserving the peace, who shall serve only so long as they are absolutely needed.

16 P.S. § 1205.   Pennsylvania Courts have likewise ruled that Row Officers, like the Sheriff, have the exclusive power to both appoint and remove Row Employees, like deputy sheriffs. *Ricci v. Matthews*, 2 A.3d 1297, 1301 (Pa.Cmwlth. 2010), aff'd sub nom. *Behr v. Matthews*, 610 Pa. 455, 21 A.3d 1187 (2011).  "While the Code does provide the Commissioners with the general authority to run county business, there are specific provisions in the Code which establish that the Row Officers have supervisory authority over the Row Employees." *Id*. See also *Troutman*

*v. AFSCME*, 87 A.3d 954 (Pa. Commw. Ct. 2014).   Furthermore, the County has no authority to remove a sheriff, as that may be only effectuated through impeachment.   16 P.S. § 3450.

Here, Mr. Day alleges that Sheriff Held was the elected Sheriff of Westmoreland County and the chief policymaker of the Westmoreland County Sheriff's Office.  (ECF No. 57 at ¶ 10). As a row officer, the Sheriff holds a distinct position within the County's governance.  The statutory landscape demonstrates that the County is divorced from any personnel decisions regarding the decisions to hire or dismiss deputy sheriffs.  Those decisions are granted exclusively to the Westmoreland County Sheriff.   Mr. Day has not alleged, nor could he, that anyone other than Sheriff Held could decide whether to hire or dismiss him.  Moreover,  Mr. Day has not alleged that the County controlled his daily activities as a deputy sheriff.  And because the County cannot appoint or remove the Sheriff, it has no ability to overrule his exclusive authority in his employment decisions. Therefore, in balancing the *Darden* factors, the Court finds, as a matter of law, the County was not Mr. Day's employer.  Thus, the County cannot be liable to Mr. Day under Title VII or PHRA.

Accordingly, because Mr. Day was not qualified for the position of deputy sheriff and the County was not his employer, the County's Motion to Dismiss will be granted.   Because these threshold matters are clear as a matter of law and this is Mr. Day's Third Amended Complaint, any further amendment is deemed futile.   Counts I, II, and III will be dismissed.

B.  Equal Protection Claim

The County contends that Mr. Day fails to state a plausible equal protection claim under Section 1983.  Specifically, the County maintains that Mr. Day does not aver that a County policymaker with decision-making authority was personally involved in this dispute.   Instead, the County argues that the Sheriff is an elected row officer as opposed to a county commissioner,

11

county administrator, or a county employee and that Mr. Day has conflated the policymaking authority of Sheriff Held with that of the County. Mr. Day contends that he has sufficiently pleaded that Sheriff Held, suspended and terminated him from his employment based upon his race in direct violation of his rights under the Fourteenth Amendment.

A county, municipality, or agency may not be sued under Section 1983 unless their policy or custom caused Plaintiff's injury. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978). To assert a Section 1983 against a government entity, a plaintiff must allege (1) a constitutionally-protected right has been violated and (2) the alleged violation resulted from a municipal policy, custom, or practice of deliberate indifference to the rights of citizens. *Id*. at 694-95. A policy is "made when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict." *Estate of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019) (quoting *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990)). A custom can be shown when a "'given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law.'" *Roman*, 914 F.3d at 778 (quoting *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990)).

Courts in the Third Circuit have consistently concluded that county sheriffs are final policymakers with regard to employment decisions concerning deputy sheriffs. *See e.g. Cipilewski v. Szymanski*, 2011 U.S. Dist. LEXIS 31303 (M.D. Pa. 2011); *McGovern v. City of Jersey City*, 2008 U.S. Dist. LEXIS 293, (D.N.J. 2008); *Morgan v. Rossi*, 1998 U.S. Dist. LEXIS 5087 (E.D. Pa. 1998).

Here, a similar analysis of Mr. Day's Title VII and PHRA claims applies here as well. The Sheriff's autonomy as a final policymaker is not in dispute. The statutory schemes, as

discussed above, clearly granted Sheriff Held the independent ability to hire, suspend, and terminate Mr. Day as a deputy sheriff. The non-Sheriff policymakers of the County had no statutory or regulatory authority to overrule Sheriff Held's decision, with regards to Mr. Day. In fact, the only remedy in removing Sheriff Held, is through an impeachment process handled by the governor and/or state senate. *See* 16 P.S. § 450. In short, there can be no imputation of Sheriff Held's employment decisions to the County under these circumstances. With that said, the crux of Mr. Day's equal protection claims lies with policymakers outside of Sheriff Held and the County, namely the PCCD and its associated entities. Therefore, it does not follow that Mr. Day's alleged damages resulted from a municipal policy, custom, or practice of deliberate indifference to his rights.

Accordingly, the County's Motion to Dismiss, as regard Mr. Day's equal protection claim, will be granted. Because these threshold matters are clear as a matter of law and this is Mr. Day's Third Amended Complaint, any further amendment is deemed futile. Count IV will be dismissed.

IV.  Conclusion

Following review of Mr. Day's Third Amended Complaint (ECF No. 57), the County's Motion to Dismiss (ECF No. 59), the respective briefs (ECF Nos. 60 and 61), and for the foregoing reasons, the County's Motion to Dismiss will be granted. Any amendment will be deemed futile. Mr. Day's Third Amended Complaint will be dismissed. A separate order will follow.

DATED this 28th day of October, 2021.

BY THE COURT:

_____
MARILYN J. HORAN
United States District Judge